## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Christopher C. Goff,
an infant, by his next friend,
Susan L. Goff

v.

Robert Hauser Homes, Inc.,
and Wiley Harris

October 15, 2003

Case No. (Law) 02-105

BY JUDGE EDWARD L. HOGSHIRE

This letter addresses the Special Plea of the Workers' Compensation Act, based on the Virginia Workers' Compensation Act, Virginia Code Ann., Title 65.2 (2003) ("WCA"), brought by the defendants, Robert Hauser Homes, Inc., and Wiley Harris. Susan L. Goff brought a Motion for Judgement on behalf of her son, Christopher C. Goff ("Plaintiff"), alleging that Defendant's negligence caused Plaintiff's injuries. Defendants seek to have the motion dismissed on the ground that the Plaintiff's exclusive remedy is provided by the WCA. The parties agreed to have their case decided on the basis of depositions and briefs filed with this Court. For the reasons set forth in detail below, the Court holds that as an employee of his father's painting business, Plaintiff's personal injury claim is barred by the WCA.

### Statement of Facts

Goff Painting Contractors ("Goff Painting") is a sole proprietorship owned by Hubert Goff, Plaintiff's father. (H. Goff Dep. at 5.) Goff Painting is engaged in the business of interior and exterior prepping and painting. Plaintiff had assisted his father in his painting business on a repeated basis in the year before Plaintiff sustained the injuries which are the subject of this present litigation. (H. Goff. Dep. at 9-10; C. Goff Dep. at 7-12; S. Goff Dep.

at 9-11.) Plaintiff received compensation when he accompanied and helped his father on trips to worksites; he was compensated either in cash or in the form of credit towards a previous purchase made on behalf of the Plaintiff by his family. (S. Goff Dep. at 9-10; H. Goff Dep. at 11.) This compensation ranged from $5 to $10, even for completing very modest work tasks or for simply accompanying Hubert to a worksite. (S. Goff Dep. at 13.) Hubert Goff stated that he had been trying to teach Plaintiff of the value of work and would pay him depending on how much work Plaintiff did that day or whether Plaintiff complained about helping. (H. Goff Dep. at 11,13; S. Goff Dep. at 10.) In 2000, the year of the accident, Hubert Goff had purchased a stereo for Plaintiff, on the condition that he would help his father. (H. Goff Dep. at 11).

In addition to credit, Plaintiff received payments from his father on personal as well as Goff Painting company checks. (H. Goff Dep. at 18-22, 26; Def. Ex. 10.) Hubert Goff took an $1800 family employee deduction of Plaintiff's pay on his 1999 tax return. (Def. Ex. 3; H. Goff Dep. at 20.) Plaintiff never filed a tax return nor were withholdings ever taken out by his father. (H. Goff Dep. at 26.) Hubert Goff asserts that Plaintiff was not really paid anything but an allowance and that he and his wife, Susan Goff, were simply following an accountant's advice on how to increase their deductions and reduce their taxable income. (H. Goff Dep. at 12-13.)

On January 19, 2000, Plaintiff, then fourteen years of age, accompanied his father to a Robert Hauser Homes worksite, where his father was a painting subcontractor. Hubert asserts that they arrived at the work site between 11:00 a.m. and noon and that Plaintiff was only going to be there for half an hour. (H. Goff Dep. at 9, 17.) Plaintiff states that they arrived at the worksite around 10:00 a.m. and that he expected to help his father paint the walls but, since the doors had not yet been hung, was directed by his father to hang doors first. (C. Goff Dep. at 18-19.) Hubert then left to get tools and supplies, leaving Plaintiff with the task of hanging doors. (C. Goff Dep. at 20.)

After Plaintiff commenced work on the second floor, a fire began on the first floor, and, as it engulfed the house, Plaintiff attempted to escape the smoke and fumes. (C. Goff Dep. at 23.) Plaintiff hung from a upstairs window and eventually dropped onto the ground beside the house, injuring his leg. (C. Goff Dep. at 23-26.)

On January 28, 2000, Susan Goff filed a workers' compensation claim on behalf of the Plaintiff, who collected medical costs from the claim totaling $822.30. (Def. Ex. 5-6, 8-9.) She withdrew the workers' compensation claim on May 4, 2000, prior to filing this action on behalf of Plaintiff. (S. Goff Dep. at 17.)

*Issue Presented*

Under the WCA, is Plaintiff a statutory employee of his father, Hubert Goff, and therefore barred from bringing a personal injury suit against Defendants?

*Analysis*

This case turns on whether Plaintiff was an employee within the meaning of the WCA at the time of the accident. The WCA, Virginia Code § 65.2-300(A), states in part:

> Every employer and employee, except as herein stated, shall be conclusively presumed to have accepted the provisions of this title respectively to pay and accept compensation for personal injury or death by accident arising out of and in the course of the employment and shall be bound thereby.

Va. Code Ann. § 65.2-300 (2003). If Plaintiff was an employee of his father or his father's painting business at the time of injury, Plaintiff is barred from bringing a personal injury suit against Defendants under the WCA.

An employee is defined under the WCA as "[e]very person, including aliens and minors, in the service of another under any contract of hire or apprenticeship, written or implied. . . ." Va. Code Ann. § 65.2-101 (2003). In this instance, to establish statutory employee status under the WCA, it is necessary to demonstrate that an implied contract of hire existed between Plaintiff and his father or his father's business.

The Virginia Supreme Court has stated that an implied contract of hire:

> exists where one party has rendered services or labor or value to another under the circumstances which raise the presumption that the parties intended and understood that they were to be paid for, or which a reasonable man in the position of the person receiving the benefit of the services or labor would or ought to know that compensation or remuneration of some kind was to be exchanged for them.

*Charlottesville Music Center v. McCray*, 215 Va. 31, 35, 205 S.E.2d 674, 678 (1974). In *Charlottesville Music Center*, a friend of an employee who did not expect compensation was killed while working in the music store. The Virginia Supreme Court found that decedent was not an employee: "[w]hen services or labor are rendered voluntarily without a promise of compensation

or remuneration of any kind, express or implied, then the one providing the services or labor has supplied them gratuitously, and is not covered by the [WCA]." *Id.*

The Virginia Supreme Court in *Humphries v. Thomas* held that the mere preexisting circumstance of an employer-employee relationship "did not raise a presumption that the parties intended and understood that Thomas [the employee] would be compensated in exchange for making [a] trip" during which an accident occurred. 244 Va. 571, 575, 422 S.E.2d 755, 757 (1992). Merely travelling with one's employer is not sufficient to create an implied contract of hire for that trip.

Establishing an implied contract of hire requires a showing, under the circumstances relevant to this case, that Plaintiff expected compensation on the day of the accident. In the case at bar, the circumstances show that such an implied contract did exist. The facts show that in the past, Plaintiff had repeatedly worked for his father over the previous year, and that Hubert Goff had repeatedly paid compensation to Plaintiff, in the form of cash, company and personal checks, or credit toward a previously purchased item. Plaintiff had been "working off" a stereo that year. Such facts raise the presumption that the parties understood that Plaintiff would be compensated for working that day. This case is distinguishable from *Humphries* because, unlike the employee who accompanied his employer on a trip, Plaintiff expected to work on that day, with the anticipation of compensation or credit toward some item previously purchased on his behalf. Further, Plaintiff expected to complete significant tasks, like helping to paint walls, on the day of the accident. In the past, Plaintiff had received compensation for providing minimal assistance or just for going to work with his father. The preexisting relationship between the parties, with the expectation that Plaintiff would perform a substantial quantity of work, coupled with the actual amount of time it would take to complete the tasks as directed by Hubert Goff, leads the Court to conclude that Plaintiff expected to be compensated for work performed that day. As such, Plaintiff was under an implied contract of hire on the day of injury.

The fact that Plaintiff's mother initially filed a claim under the WCA, and the fact that Plaintiff appeared on his father's tax return as a family employee, further bolster the Court's conclusion that Plaintiff was under an implied contract of hire and that Plaintiff's status was that of an employee for the purposes of the WCA.

## Conclusion

The Court finds that Christopher Goff was an employee while he was injured and, therefore, is barred from bringing a personal injury claim against the Defendants. Plaintiff's exclusive remedy is provided by the Virginia Workers' Compensation Act. Defendants' Special Plea of the Workers' Compensation Act is sustained.